UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
:
In re: :
: **ORDER DENYING MOTION**
KUMTOR GOLD CO. CJSC, and : **FOR APPEAL AS OF RIGHT,**
KUMTOR OPERATING CO. CJSC, : **LEAVE TO APPEAL, OR**
: **DIRECT APPEAL**
Debtors, :
: 21 Civ. 6578 (AKH)
:
:
:
:
------------------------------------------------------- X
:
KYRGYZ REPUBLIC, :
:
:
Appellant, :
-against- :
:
KUMTOR GOLD CO. CJSC, and :
KUMTOR OPERATING CO. CJSC, :
:
Appellees. :
:
------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

   This matter arises out of a dispute over the Kumtor Gold Mines in Kyrgyzstan. Appellant Kyrgyz Republic appeals from an Order entered by the Bankruptcy Court of the Southern District of New York on July 20, 2021, finding Appellant in contempt of violating the court's automatic worldwide stay under 11 U.S.C. § 362(a) and ordering Appellant to pay the attorney's fees of Appellee-Debtors Kumtor Gold Company CJSC ("KGC") and Kumtor Operating Company CJSC ("Appellee-Debtors" or "Appellees") as sanction.  Appellant moves to appeal: as of right under 28 U.S.C. § 158(a)(1), with leave of the Court under 28 U.S.C. §

1

158(a)(3), or in the alternative, directly to the Second Circuit under 28 U.S.C. § 158(d)(2)(A), arguing that the Bankruptcy Court rejected Appellant's claims of sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* Motion to Appeal as of Right, or in the alternative, Leave to Appeal ("Mot. 1"), ECF No. 4; Motion for Direct Appeal ("Mot. 2"), ECF Nos. 12 (collectively the "Motions"). For the reasons below, Appellant's Motions are denied.

## BACKGROUND

The facts as alleged are as follows. Appellee-debtors are the owners of Centerra Gold, Inc., which has operated the Kumtor Gold Mines in Kyrgyzstan, pursuant to contractual agreements with the Kyrgyz government, since 1996. Ex. D to James L. Bromley Declaration, Declaration of Daniel Desjardins, ¶ 6, ECF No. 6-4. On May 14, 2021, the Kyrgyz Government enacted a Temporary Management Law, which allows the Kyrgyz President to seize control of KGC's assets, including the Kumtor Mine and KGC's bank accounts. *Id.* ¶ 36. On May 31, 2021, Appellees filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York (the "Chapter 11 Cases"). This filing triggered an automatic stay under 11 U.S.C. §§ 362(a), (c) (the "362 Order"). On June 4, 2021, Debtors filed a motion to enter the "362 Order" and requested that the Order apprise all parties-in-interest, including non-U.S. governmental units. ECF No. 6-5.

On June 8, 2021, the Bankruptcy Court held the first hearing in the Chapter 11 cases, where Appellant's counsel objected to the "362 Order" and requested that the Kyrgyz Republic and government-owned instrumentality Kyrgyzaltyn JSC be excluded from the effect of the order. The Bankruptcy Court overruled Appellant's objections and entered the "362" Order. Thereafter, Appellant filed a Motion to Dismiss the Chapter 11 Cases, asking the

2

Bankruptcy Court to dismiss the cases on several grounds, including Appellant's foreign sovereign immunity. Bromley Decl., Ex. C., ECF No. 6-3; Opp. Mot. 1, at 4 (citing Motion to Dismiss in Bankruptcy Court, ¶ 40).

On June 21, 2021, Appellant commenced an action in the Oktyabrsky District Court of Bishkek, seeking a declaration that KGC's Authorizing Resolutions is invalid. Declaration of Benjamin Mintz, Ex. B, ECF No. 5-2. On June 24, 2021, Appellant filed an application with the District Court of Bishkek, seeking a declaration that the commencement of the Chapter 11 Cases was invalid. Opp. Mot. 1, at 2. On June 30, 2021, Appellant commenced an action in the Leninsky Court to enjoin the Appellee-Debtors, non-debtor individuals and firms from acting on behalf of KGC in the Chapter 11 proceedings. Mot. 1, at 4; Motion in Opposition for Leave to Appeal ("Opp. Mot. 1"), at 9, ECF No. 7.

On July 12, 2021, Appellees filed an emergency motion to enforce the automatic stay and the "362 Order," seeking to enjoin the Kyrgyz proceedings and to impose contempt sanctions for Appellant's violation of the automatic stay pursuant to Sections 105 and 106 of the Bankruptcy Code. Decl. Bromley, Ex. F, ECF No. 6-6. On July 14, 2021, Appellees commenced an Adversary Proceeding against Appellant, seeking a temporary restraining order (TRO) against Appellant's actions in violation of the automatic stay. Opp. Mot. 1, at 9–10; Adv. Pro. No. 21-01175, Dkt. Nos. 1–4. J

On July 19, 2021, the Bankruptcy Court held a hearing regarding the emergency motion and the request for the TRO. Appellant argued, in part, that the Bankruptcy Court lacked jurisdiction over Appellant because it has foreign sovereign immunity under the FSIA, and no exceptions applied. Transcr. 41:18–42:6, ECF No. 12-2.

The Bankruptcy Court found as follows. As to the automatic stay, Appellant violated Section 362(a)(3). *Id.* 80:1–7; 81:19–23 ("[T]here was a resolution filed commencing proceedings before me, and that resolution provided for the rights to take certain actions dealing with property of the estate and control over property of the estate. And what that injunction in the Kyrgyz court does is it infringes on that."); 82:1–2 ("I am ruling that there is a violation of the automatic stay by the Kyrgyz Republic."). Despite Appellant's arguments to the contrary, the court found that the injunctive relief Appellant sough in the Kyrgyz Courts did not fit within the police and regulatory powers of the Kyrgyz government, nor were the Kyrgyz proceedings criminal.[1] *Id.* 77:10–16 ("It does not appear that it's a criminal proceeding. It does not appear to me that there's any criminal sanctions that were cited in connection with the injunction relief that was sought and the temporary suspension. And therefore, I don't think that this is an issue where the automatic stay doesn't apply because what was being done was a criminal proceeding.").

As to contempt, the court "[didn't] feel that there [wa]s a Foreign Sovereign Immunities Act issue [] with respect to 362 and 105 relief, both because of 106 of the Bankruptcy Code [], and also because of some of the commercial provisions of it." *Id.* 82:6–10.

As to injunctive relief, although the court found that the standards for an injunction under Section 105(a) were met, *id.* 82:12–15; 83:12–87:2, it lacked the power to grant such relief because Appellant had not received proper service in compliance with Section 1608 of the FSIA, and Section 7001 of the Bankruptcy Code requires an injunction to be sought in connection with an adversary proceeding, which requires service of a complaint and summons. *Id.* 91:5–12.

---

[1] The Temporary Management Law is not itself a criminal statute, but a provision within it amends Kyrgyz criminal law to make the violation of the Law a criminal offense. ECF No. 6-4, ¶¶ 42–43.

4

Finally, as to the request for contempt sanctions, the court granted the request for legal fees under Section 105. *Id.* 91:13–18. As was the case with respect to the TRO, however, the court found that it could not enter an order awarding the attorney's fees, absent service of the summons and complaint, under Fed. R. Bankr. P. 9014(b). *Id.* 92:12–14.

On August 4, 2021, Appellant filed a notice of appeal in this Court, moving to appeal as of right or with leave of the court. ECF No. 4. On September 15, 2021, Appellant filed a motion for leave to appeal directly to the Second Circuit. Appellant presents the following question: "Did the Bankruptcy Court commit legal error when it disregarded the Kyrgyz Republic's sovereign immunity in entering the Order holding it in contempt and issuing sanctions against it for violating the automatic stay." Mot. 1, at 11.

## DISCUSSION

I.  Legal Standard

Section 158 gives district courts jurisdiction over appeals from bankruptcy courts. 28 U.S.C. § 158.

A.  Appeals as of Right

Parties may appeal to the district court as a matter of right "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1); Fed. R. Bankr. P. 8001(a). An order is final "if [it] finally dispose[s] of discrete disputes within the larger [bankruptcy] case." *In re Penn Traffic Co.*, 466 F.3d 75, 77–78 (2d Cir. 2006) (citation omitted). "Given the strong federal policy against piecemeal appeals, . . . a 'dispute,' for appealability purposes in the bankruptcy context, means at least an entire claim on which relief may be granted." *In re Fugazy Exp, Inc.*, 982 F.2d 769, 775–76 (2d Cir. 1992). "[T]he order need not resolve all of the issues raised by the

bankruptcy; but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." *Id.* at 776.

In addition, a "small class" of rulings may be appealable as of right under the collateral order doctrine. While they may not conclude the litigation, such rulings "conclusively resolv[e] claims of right separable from, and collateral to, rights asserted in the action." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (cleaned up). A collateral order is only appealable if an appeal will "(i) conclusively resolve the disputed question; (ii) resolve an important issue separate from the merits of the action; and (iii) be effectively unreviewable on appeal from a final judgment." *Kensington Intern. Ltd. v. Republic of Congo*, 461 F.3d 238, 240 (2d Cir. 2006) (cleaned up).

B.     Leave to Appeal

"Even when orders are not 'final,' under 28 U.S.C. § 158(a)(3), district courts have jurisdiction to hear appeals from interlocutory orders and decrees with leave of the court." *Sterling v. Harrison (In re Sterling)*, No. 17-CV-248, 2018 U.S. Dist. LEXIS 34638, at *3 (S.D.N.Y. Mar. 2, 2018) (citing *Gibson v. Kassover (In re Kassover)*, 343 F.3d 91, 94 (2d Cir. 2003)), *appeal dismissed*, No. 18-995, 2018 U.S. App. LEXIS 28495 (2d Cir. July 23, 2018); *see also* Fed. R. Bankr. P. 8004 (providing procedure for appeal requiring leave). Although neither the Bankruptcy Code for the Federal Rules of Bankruptcy provide standards for evaluating a motion for leave to appeal, the majority of courts have applied the analogous standard for certifying an interlocutory appeal set forth in 28 U.S.C. § 1292(b). *See, e.g.*, *MCI WorldCom Communs. v. Communs. Network Int'l, Ltd. (In re WorldCom, Inc.)*, 358 B.R. 76, 78 (S.D.N.Y. 2006); *In re Alexander*, 248 B.R. 478, 483 (S.D.N.Y. 2000); *In re Johns-Manville Corp.*, 45 B.R. 833, 835 (S.D.N.Y. 1984). The collateral order doctrine "accommodates a 'small class of

rulings, not concluding the litigation, but conclusively resolving 'claims of right separable from, and collateral to, rights asserted in the action.'" *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citation omitted). However, it is in the district court's "discretion" to "permit an appeal from such order." 28 U.S.C. § 1292(b).

Section 1292(b) provides that leave should only be granted if the order being appealed (1) "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." The Second Circuit has held that the district court's power to grant an interlocutory appeal should not be "liberally construed." *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24–25 (2d Cir. 1990). Instead, district courts should "exercise great care in making a § 1292(b) certification." *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992). *Compare also In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) ("[U]se of this certification procedure should be strictly limited because only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." (citations and quotation marks omitted), *with In re Manville Forest Prods. Corp.*, 31 B.R. 991, 995 n.5 (S.D.N.Y. 1983) (indicating that applications for leave to appeal should be liberally granted where it can help the expeditious resolution of the case).

As to the first prong, "the question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re WorldCom, Inc.*, 2003 U.S. Dist. LEXIS 11160, at *9 (citation and internal quotation marks omitted). A controlling question of law exists when either (i) reversal of the bankruptcy court's

order would terminate the action, or (ii) determination of the issue on appeal would materially affect the outcome of the litigation." *North Fork Bank v. Abelson*, 207 B.R. 382, 389 (E.D.N.Y. 1997) (citing *Klinghoffer*, at 24).  As to the second prong, substantial grounds for difference of opinion "must arise out of a genuine doubt as to the correct applicable legal standard that was relied upon in the order." *Id.* (citation and internal quotation marks omitted).  "[I]t must involve more than strong disagreement between the adversary parties. . . . [f]or example, there are substantial grounds for difference of opinion when the issue is "difficult and of first impression") (quoting *Klinghoffer*, 921 F.2d at 25); *see also In re Flor*, 79 F.3d at 284 (stating "that the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion").  Finally, an appeal materially advances the termination of the litigation if it "promises to advance the time for trial or to shorten the time required for trial" or has "the potential for substantially accelerating the disposition of the litigation." *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (citations omitted).

        C.        Direct Appeal to the Second Circuit

Section 158(d)(2)(A) allows direct appeals to the Second Circuit if any of the following three factors apply: "(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken; and if the court of appeals authorizes the direct appeal of the judgment, order, or decree." 28 U.S.C. § 158(d)(2)(A).  Whereas Section

1292(b) "permits certification only when three enumerated factors suggesting importance are all present," Section 158(d) "permits certification when any of several such factors exist." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015).

II.     Appeal as of Right

Appellant argues that the question presented is appealable as a matter of right under the collateral order doctrine because the Second Circuit has held that the denial of foreign sovereign immunity under the FSIA is immediately appealable as a collateral order. Mot. 1, at 7–8. Appellees argue that the Bankruptcy Court issued no such order and rested its decision on Sections 105 and 106, which allow bankruptcy courts to issue orders to protect their jurisdiction and abrogate foreign sovereign immunity. Opp. Mot. 1, at 11–14.

Neither party is correct. While Appellant is correct about Circuit law—that the denial of foreign sovereign immunity is immediately appealable—it is incorrect about its applicability to the instant case. Likewise, Appellees are incorrect that the Bankruptcy Court did not rule on foreign sovereign immunity.

The Bankruptcy Court did not deny Appellant's claim of immunity from suit. But it did, at least implicitly, rule on the FSIA's applicability to Sections 105, 106, and 362. The court indicated that it found "no issue" under the FSIA. That said, the ruling and the Order are not as broad as Appellant portrays them. The extent of the court's holding was that the FSIA did not immunize Appellant from enforcement of the stay and awarding sanctions, the latter of which are unenforceable unless and until Appellees properly serve Appellant with the summons and complaint in the Adversary Proceeding. I therefore hold that Appellant cannot appeal as of right based upon a denial of foreign sovereign immunity.

Similarly, the Order does not fall within the "narrow exception" proscribed under the collateral order doctrine, *Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 430–31 (1985), as the Order finding Appellant in violation of the stay, as well as the sanctions award (if ever enforced), "can be effectively reviewed on appeal from a final judgment." *North Fork*, 207 B.R. at 389; *In re Johns-Manville corp.*, 824 F.2d at 180 (stating that the collateral order doctrine "is confined to 'trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal'") (quoting *Richardson-Merrell*, 472 U.S. at 430–31).

I deny Appellant's Motion to Leave as a Matter of Right.

III. Leave to Appeal

Appellant argues for leave to appeal because all three factors required under Section 1292(b) are satisfied. Mot. 1, at 8–13. Appellees argue that none of the factors are met, and further that Appellant fails to argue why extraordinary circumstances merit granting its Motion. Opp. Mot., at 14–21.

I find that the question presented does not satisfy all three factors. While the questions of how Section 106 interacts with the FSIA, including whether a bankruptcy court may enforce an automatic stay against a foreign sovereign asserting immunity and whether that court can sanction such a foreign sovereign, are interesting, and may even be ones upon which there is substantial disagreement,[2] none is a controlling question of *only* law, nor one that will materially

---

[2] The parties cite, and the Court has only found, two out-of-circuit cases addressing this issue, and both favor Appellees' position. In *In re Tuli*, the Ninth Circuit held that "foreign states can no longer assert sovereign immunity from liability for certain actions under the Bankruptcy Code, including adversary proceeding complaints brought pursuant to 11 U.S.C. § 542" because "section 106 abrogates sovereign immunity as to a 'governmental unit,' which the Bankruptcy Code specifically defines to include a foreign state or other foreign or domestic government." 172 F.3d 707, 711-12 (9th Cir. 1999). In *In re RMS Titanic, Inc.*, a Florida Bankruptcy Court held the held that "[s]overeign immunity has also been waived or abrogated by statute with respect to issues arising under certain sections of the Bankruptcy Code" via the application of section 106, and "[s]uch a waiver is consistent with the Court's expansive jurisdiction to determine all matters related to property of a bankruptcy estate." 569 B.R. 825, 834 (Bankr. M.D. Fla. 2017).

advance the litigation. While Appellant contends that a ruling on its amenability to suit in a Bankruptcy Court will terminate the litigation, this precise question is not before the Court. As noted above, the court only ruled that Appellant is subject to, and violated, the automatic stay, and sanctionable under the Bankruptcy Court's inherent and statutory authority. A ruling to the contrary will not end the Chapter 11 Cases, and Appellant remains free to advance its foreign sovereign immunity claim in support of its pending Motion to Dismiss.³

The question presented, as framed by Appellant, is not the issue decided by the Bankruptcy Court, and thus not an issue that this Court has the power to decide. I therefore deny Appellant's Motion for Leave to Appeal.

IV. Direct Appeal

Finally, Appellant moves for direct appeal to the Second Circuit, again based upon the denial of foreign sovereign immunity, and arguing that the question presented is a controlling question of law, of great public importance, requires the resolution of conflicting decisions, and will materially advance the progress of the Adversary Proceeding and Chapter 11 Cases. *See generally* Mot. 2. Appellees advance substantially the same arguments as they did to the prior motion. Opposition to Motion for Direct Appeal ("Opp. Mot. 2"), ECF No. 16.

The question presented by Appellant does not meet any of the requirements, justifying direct appeal to the Second Circuit.

---

³ To the extent that Appellant's seek an advance determination of the larger question of whether an assertion of foreign sovereign immunity precludes suit in the Bankruptcy Court, this Court advises Appellant that Article III courts are precluded from issuing advisory opinions in the absence of a case or controversy. *See* Letter from Chief Justice Jay and Associate Justices to President Washington (Aug. 8, 1793), in 3 THE CORRESPONDENCE AND PUBLIC PAPERS OF JOHN JAY 1782–1793, at 488–89 (Henry P. Johnston ed., 1891) (refusing to render an advisory opinion requested by the President and Secretary of State, holding that such an opinion would be "extra-judicial[]" and thus would violate the "lines of separation drawn by the Constitution between the three departments of the government").

First, for the reasons described above, the question presented does not involve a controlling question of law. Nor does it involve a matter of public importance. In arguing to the contrary, Appellant offers citations to two cases—one involving the intersection between bankruptcy and environmental law, and the other an intersection between bankruptcy law and the Paycheck Protection Program—neither of which has any relevance to this matter. Appellant further posits a telling hypothetical about Amazon attempting to evade U.S. law by filing bankruptcy in a foreign country and seeking an injunction to halt congressional efforts to impose laws on it. Mot. 2, at 10–11. It is thus clear that Appellant seeks to have resolved a question that goes to the merits of the ultimate litigation, but a question upon which the Bankruptcy Court has yet to render a decision.

Second, the question presented does not require resolution of conflicting decisions. Appellant points to three out-of-circuit cases—two of which held that a foreign sovereign's immunity was abrogated by Section 106 in a bankruptcy adversary proceeding, *see In re Tuli*, 172 F.3d 707 (9th Cir. 1999); *In re RMS Titanic, Inc.*, 569 B.R. 825, 834 (Bankr. M.D. Fla. 2017), and one which held that Section 106 does not provide a separate basis for exercising jurisdiction over foreign sovereigns. *See In re EAL (Delaware) Corp.*, No. 93-578-SLR, 1994 WL 828320, at *12 (D. Del. Aug. 3, 1994). Appellees concede that there are conflicting decisions and none from the Second Circuit.

While I recognize the absence of controlling authority as to the jurisdictional issue posed by the intersection of Section 106 and the FSIA, the Bankruptcy Court did not assert jurisdiction over Appellant as to the Adversary Proceeding. In fact, the Bankruptcy Court was careful to note its concerns about doing just this. At multiple points in the July 19 Hearing, the court acknowledged that for the purposes of the hearing, Appellant was not "appearing" before

it, in the jurisdictional sense. *See, e.g.*, Transcr. 64:12–13 (acknowledging that Appellant was "not appearing in front of [the court]"). Appellant conceded, however, that for the purposes of its Motion to Dismiss, it would be "appearing." *Id.* 64:2–3. Further, in its ruling, the Bankruptcy Court again couched: "The Kyrgyz Republic is accessing our courts and speaking before me in the courts - - again, not using the word 'appearing', but making arguments before me in the courts, but yet there is a disregard in some ways for the court system here and our process here and how that has to appear." *Id.* 88:21–25. I find that there are no conflicting decisions regarding the narrow issue decided by the Bankruptcy Court—that it has authority under Sections 105 and 106 to enforce the automatic stay and award sanctions—and thus no grounds warranting a direct appeal.

Finally, for the reasons discussed above, I find that a direct appeal will not materially advance the termination of the Adversary Proceeding or the Chapter 11 Cases.

In conclusion, because Appellant fails to demonstrate that any of the factors warranting a direct appeal to the Second Circuit apply, its Motion for Direct Appeal is denied.

## CONCLUSION

Because Appellant fails to satisfy the standards justifying an appeal as of right, leave to appeal, or a direct appeal to the Second Circuit, Appellant's Motions are denied. The Clerk of Court shall terminate ECF Nos. 4, 12.

SO ORDERED.

Dated:   October 19, 2021               /s/ Alvin K. Hellerstein
         New York, New York         ALVIN K. HELLERSTEIN
                                    United States District Judge